**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MANJINA PATEL, as the Guardian of
KISHAN PATEL, an incapacitated person,

                         Plaintiff,

    vs.

THE CITY OF NEW YORK, POLICE
OFFICER HIEU TRAN, MAYOR ERIC
ADAMS, COMM. EDWARD CABAN, and
POLICE OFFICERS JOHN DOE 1-10

Civil Action No. 24-cv-7428

**JURY TRIAL DEMANDED**

---

**COMPLAINT**

PRELIMINARY STATEMENT

1.     On May 17, 2024, thirty-year-old Kishan Patel was shot in the head by Officer Hieu Tran, a "ticking timebomb" employed by The New York City Police Department ("NYPD"). Although Mr. Patel miraculously survived this random and preventable act of violence, he will require 24/7 skilled nursing care for the rest of his life as he is now a quadriplegic who has also suffered an anoxic brain injury.

2.     Defendant City of New York knew that Tran had significant mental health challenges with longstanding alcoholism, despite his being only twenty-seven years old. Somehow, he was accepted into the NYPD and armed with a service pistol, but soon became a "problem officer" who needed to be taken "off the street." After serving in Harlem for less than three years, Officer Tran was transferred to the office of the Deputy Commissioner of Public Information ("DCPI"). This is a well-known repository for NYPD employees who have committed acts of misconduct but, for some reason, are not removed from the NYPD altogether.

Most officers who are sent to DCPI have already accumulated many years of experience. Officer Tran's assignment to this office is highly unusual because of his notable lack of experience.

3.    Notably, Officer Tran was *not suspended* from the force and was *not required to surrender his 9mm service pistol*. That is the same weapon that he used to shoot Kishan Patel.

4.    The shooting took place in southern New Jersey, not far from Philadelphia. After leaving Patel to bleed uncontrollably in the cab of his pickup truck, Officer Tran calmly drove north, stopped for gas, went home to New York, reloaded his weapon and went to work the next day like nothing had happened. Officer Tran was also found to have been conducting internet searches to learn about the shooting.

5.    Local police in New Jersey were able to reassemble Officer Tran's movements from numerous video sources, including sources which show the actual incident. The three 9mm shell casings found at the scene matched Officer Tran's service weapon. Officer Tran was arrested at his workplace at the Office of Public Information, charged with attempted murder and other offenses, and has been in custody in Camden County, New Jersey, ever since.

6.    At a pre-trial detention hearing, Judge Michael Joyce of the New Jersey Superior Court denied bail after reviewing the state's evidence. Part of that evidence was a psychological evaluation that Officer Tran was on a downward spiral. The following excerpts from the transcript of that hearing show the implications of what was in the psychological report, and the fact that Officer Tran's NYPD superiors knew of these issues:

Now what we have here, according to Dr. Wiltzy, is a young police officer suffering from untreated work related PTSD, depressive disorder and a long history of substance abuse, specifically, Judge, he's been self medicating with alcohol for years. Dr. Wiltz offers the opinion that these conditions were a direct contributing factor to this unfortunate event. Dr. Wiltzy also --

THE COURT: His commanding officer in New York PD told him to get treatment for it and didn't do it.

MR. GIGLIOTTI: Excuse me?

THE COURT: His commanding officer, New York PD recognized he had an alcoholic abuse problem, told him to get treatment for it, hasn't done it.

MR. GIGLIOTTI: And he didn't. Understood.

Dr. Wiltzy further indicates, Judge, that he believes Officer Tran was on a downward spiral.

Defense counsel noted that the treating -- or evaluating psychologist, rather, Dr. Wiltzy, indicate that he's on a downward spiral. That's located on page nine of the report. Going down the following sentence the doctor goes on the opine that, "It seems inevitable that something tragic was impending in his life based upon his physical, psychological and emotional deterioration."

So if I read this correctly, the doctor's essentially opining that his was almost inevitable that this defendant was going to do something awful. Nothing about this report says that it was limited to a one time thing, as I read it, Your Honor.

*See*, pages 22-24 of June 25, 2024, Detention Hearing Transcript, a copy of which is attached hereto as Exhibit "A" to this Complaint.

7. The failure of the Defendant City of New York ("City") and the New York City Police Department ("NYPD") to adopt and/or enforce adequate policies, procedures, and practices to address a longstanding problem of alcohol and substance abuse by its police

officers, while both on-duty and off-duty, constituted deliberate indifference and was a proximate cause of Plaintiffs' injuries.

8.      The City's and NYPD's negligence and deliberate indifference to adequately respond to alcohol abuse and mental health challenges of its police officers includes longstanding notice of the problem and a failure to adopt and/or enforce policies, procedures and practices addressing the use and misuse of police issued service weapons by officers both on-duty and off-duty who are not fit for duty because of said abuse and mental health challenges while in possession of their firearms.

9.      Defendants Police Officers John Doe 1-10 were responsible for the recruitment, training, supervision, retention and discipline of New York City Police Officers, including Defendant Officer Tran. At all relevant times these Defendants were negligent and deliberately indifferent to the rights of Plaintiff Kishan Patel, which negligence caused the Plaintiff to suffer catastrophic injuries as further described herein.

10.     As a remedy for these violations alleged therein, Plaintiff seeks compensatory damages, punitive damages and an award of the costs and expenses of this action including attorneys' fees to the Plaintiffs pursuant to 42 U.S.C. §1988; and any such other and further relief as this Court may deem appropriate.


## JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and §1343. Plaintiffs further invoke the supplemental jurisdiction of this Court under 28 U.S.C. §1367 to hear and decide claims arising under state law.

12.     Venue in the Southern District of New York is proper under 28 U.S.C.

§1391(b)(2) because a substantial part of the events giving rise to this action occurred within the

district.

## TRIAL BY JURY

13.     Plaintiff demands a trial by jury on each and every one of their claims herein.

## PARTIES

14.     At all relevant times, **Plaintiff Kishan Patel** was a resident of Voorhees, New

Jersey.

15.     At all relevant times, **Plaintiff Manjina Patel** was a resident of Voorhees, New

Jersey. Plaintiff Manjina Patel is the mother of Kishan Patel and has been designated by the

Surrogate of New Jersey, as the legal and natural guardian of Kishan Patel, an incapacitated

person.

16.      **Defendant City of New York** is a duly constituted municipal corporation of the

State of New York. It is authorized under the laws of the State of New York to maintain a police

department, the NYPD, which acts as its agent in the area of law enforcement and for which it is

ultimately responsible. The City assumes the risks incidental to the maintenance of a police force

and the employment of police officers.

17.      **Defendant Officer Hieu Tran** was at all times relevant herein a police officer

employed by the City and the NYPD and was a resident of Westchester County. At all times

relevant to the facts of this Complaint, said Defendant was acting under color of law and within the scope of his employment. Said Defendant is sued in his individual and official capacity.

18.    **Defendant Mayor Eric Adams** ("Mayor Adams") was at all times relevant herein the Mayor of New York City and had the final say as policymaker for the hiring of the Police Commissioner and the policies, customs and practices that were in effect at the time of the events giving rise to this lawsuit. At all relevant times to the facts of this Complaint, Mayor Adams was acting under color of law and within the scope of his employment as the Mayor of New York City. Said Defendant is sued in his individual and official capacity.

19.    **Defendant Commissioner Edward Caban** ("Comm. Caban") was at all times relevant herein the New York City Police Commissioner and the police department's final policymaker. At all times relevant to the facts of the Complaint, Comm. Caban was acting under color of law and within the scope of his employment by the City. Said Defendant is sued in his individual and official capacity.

20.    **Defendant Police Officer John Does 1-10**, whose names are not presently known to Plaintiffs, were at all times relevant herein the Police Officer John Does 1-10 were` responsible for conducting the training and supervision of Officer Hieu Tran during his short career as an NYPD officer. At all relevant times to the facts of the Complaint, said Defendants were acting under color of law and within the scope of their employment by the City. Said Defendants are sued in their individual and official capacities.

21.    The conduct and injuries complained herein were inflicted on the Plaintiffs by the Defendants without any negligent or culpable conduct by the Plaintiffs.

**OPERATIVE FACTS**

22.     On May 17, 2024, Kishan Patel finished working at the liquor store he managed and co-owned with his parents, got into his yellow 2023 Dodge Ram pickup truck, and drove to his home in Voorhees New Jersey.

23.     At approximately 11:00 PM on that date, Mr. Patel was alone in his vehicle, driving northbound on Route 73 in Voorhees Township. He was just minutes from his home. As he approached Route 73's intersection with Cooper Road, there was a red light for traffic travelling in his direction. At that intersection, Route 73 northbound has two lanes of through traffic crossing Cooper Road. Mr. Patel's pickup truck was stopped in the left lane, first in line, at the red light.

24.     While Mr. Patel's pickup truck was waiting for the light to turn green, a white SUV being driven by Officer Hieu Tran pulled up next to Mr. Patel's vehicle.

25.     According to police observations of surveillance footage which showed the two cars at the intersection, they were only stopped next to each other for a moment. The video then shows the pickup truck speeding uncontrollably through the intersection before the light turns green and striking at least one other vehicle. The video also shows the white SUV going through the intersection before the light turned green and speeding up the road.

26.     Shortly after 11:00 PM Voorhees Township police officers responded to a reported motor vehicle collision. When they arrived at the scene of the incident, they found Kishan Patel still in the pickup truck. Police noted an "inordinate amount of blood" inside the vehicle and bullet strikes on the pickup truck.

27.     Mr. Patel was in the driver's seat, unconscious and unresponsive. Emergency medical personnel noted uncontrolled bleed from a gunshot wound. They initiated chest

compressions in an effort to save Mr. Patel's life. He was loaded into an ambulance, intubated, and taken to Cooper Trauma Center.

28.     At the hospital, Mr. Patel was diagnosed with multiple injuries stemming from both the gunshot wound and the motor vehicle crash that followed right after. Most significantly, Mr. Patel suffered an anoxic brain injury and a spinal cord injury. He has required round-the-clock medical care ever since.

29.     Although Officer Tran fled the scene, Voorhees Township police were able to piece together the events which occurred immediately before and after the shooting.

30.     Officer Tran had attended a wedding earlier that evening in Sicklerville, New Jersey, which is south of Voorhees, where the shooting took place.

31.     At the time of the shooting, Mr. Tran was employed by the NYPD and living in Yonkers, New York. To attend the wedding, he drove himself from his home to southern New Jersey.

32.     The Administrative Guide ("AG") for the NYPD requires that officers be fit for duty _at all times_ and that they not consume alcoholic beverages or take any other action that would prohibit them from operating their service weapon in a safe and reasonable manner. That same guide requires officers to be armed at all times that they are traveling within New York City, including when they are travelling to and from the city. _See_, AG 304-03, 304-04, 305-07, and 318-10.

33.     On the date of the shooting, Officer Tran was known to have suffered from alcoholism and other mental health challenges that should have disqualified him from being an armed and active member of the NYPD. At the aforementioned detention hearing in Camden County, New Jersey, it was disclosed that Officer Tran had been "advised" to seek help for his

alcoholism, but that he had not done so. Despite this failure, he continued to be armed and employed by the NYPD.

34.     There was no prior connection between Officer Tran and Mr. Patel. By all accounts, this appears to have been a completely random act of violence.

35.     As shown in surveillance video, the white SUV being operated by Officer Tran sped away from the scene of the shooting, leaving Mr. Patel to die. Voorhees police were able to track Officer Tran's white SUV to a nearby Wawa gas station where he calmly filled up his car and continued north to New York.

36.     Based on the myriad of surveillance videos reviewed by police, it is clear that no one was in the car with Officer Tran at any time either before or after the incident.

37.     Police recovered three 9mm spent shell casings from the scene of the shooting. Police later obtained a warrant to examine Officer Tran's service pistol. A ballistics comparison confirmed that the bullets fired at Mr. Patel were fired by the NYPD weapon which had been issued to Officer Tran.

38.     Police also examined Officer Tran's phone as part of their investigation. That examination revealed that the phone had been used to conduct internet searches for information regarding the shooting.

39.     When Officer Tran's weapon was examined by New Jersey police, it was found to have been reloaded.

40.     Officer Tran continued to report for his normal job duties as an NYPD officer between the time of the shooting and the date of his arrest on more than two weeks later.

41.     At the detention hearing held in Camden County on June 25, 2024, evidence included a psychological report that was discussed on the record. This report confirmed that

Officer Tran had long-term alcoholism and job-related PTSD. Those are conditions which should have resulted in his never having been hired as an NYPD officer and never being issued a deadly weapon. He had been advised by superiors who knew of these problems to get help, but that never happened.

42.    The detention hearing also included admissions by Officer Tran's criminal attorney that Tran had no recollection of the event as a result of excessive drinking.

43.    The City of New York and the NYPD are responsible for this tragic incident. Although Officer Tran pulled the trigger, longstanding policies, procedures and practices of the City and the NYPD proximately caused the injuries to Kishan Patrel.

44.    For at least two decades there has been an accepted alcohol culture in the NYPD and a failure, constituting deliberate indifference, to adopt and/or enforce adequate policies, procedures and practices to address a longstanding problem of alcohol and substance abuse by police officers, both on-duty and off-duty.

45.    The City's and NYPD's deliberate indifference to adequately respond to alcohol and substance abuse by its police officers includes a failure to adopt and/or enforce policies addressing the use and misuse of police issued service weapons by police officers, both on-duty and off-duty, who are not fit for duty because of said abuse while in possession of their firearms.

46.    The City and NYPD knew, or should have known, that there were serious deficiencies in the operation of the NYPD, including without limitation the provision of hiring, training, supervision, and discipline provided to Defendant Officer Tran by Defendants Police Officer John Does 1-10.

47.    The City and NYPD knew, or should have known, that there was a failure in the hiring, training, supervision, and discipline was negligent with respect to allowing a ticking

timebomb to join the force, to be a known alcoholic, suffering from traumatic stress disorder and to be allowed to remain on the force and armed with his service issued weapon.

48.    This incident of an armed and dangerous New York City police officer shooting at innocent civilians highlights an open secret within the police force- the NYPD has a longstanding alcohol and substance abuse problem, and the City has been deliberately indifferent to effectively addressing it.

49.    The City's longstanding deliberate indifference is demonstrated by the failure to take necessary steps to deal with the problem despite Commissioner Bratton vowing in 1995, during his first tenure as New York City Police Commissioner, to address it with a "new strategy on police corruption".

50.    Also in 1995, former Mayor Rudolph Guiliani created the Commission to Combat Police Corruption ("Commission") which produced a report in 1998 reviewing cases of on-duty and off-duty misconduct fueled by the misuse of alcohol. The Commission then made recommendations to address the problem, but the City and NYPD never took the necessary steps to effectively implement them.

51.    The fact that Officer Tran was known to have a long-standing problem with alcohol and other mental health issues, and that the only action taken by his superiors was to put him in the office of DCPI without disarming him, shows the nature and extent of NYPD's failure to deal with this problem.

52.    NYPD did nothing to prevent Officer Tran from taking his NYPD issued weapon and using it to commit acts of violence and mayhem.

53.    Officer Tran's misconduct was not an isolated incident as evidenced by the number of other incidents involving NYPD officers who should not have been on the force.

54.     There are numerous other examples of alcohol abuse by NYPD officers, and the harms that result. Examples include, but are not limited to:

a.   On October 6, 2013, drunken off-duty NYPD Police Officer Joseph McClean was arrested and charged after hitting a pedestrian in Staten Island. The pedestrian was killed and the officer was charged with manslaughter.

b.   In August 2013, veteran NYPD Police Officer Ronald Holmes was charged with drunken driving related offenses after driving the wrong way on the Southern State Parkway, in Long Island, New York.

c.   In March 2013, Joseph King, a 28-year-old NYPD Police Officer, was charged with DWI, Leaving the Scene of an Accident, and Refusal to Take Breath Test. Police say King had gotten into an accident on the BQE in Queens around 4:30 a.m. on Sunday. After allegedly fleeing the scene and then being pulled over, he refused to take a breath test.

d.   On March 17, 2013, at 6 a.m., NYPD Police Officer Dennis Munge, 32, was charged with DWI in Jackson Heights, Queens.

e.   On March 18, 2013, at 1:30 a.m., NYPD Detective Washington Mosquera, 37, was charged with DWI in Brooklyn.

f.   On November 16, 2012, NYPD Police Officer Miguel Ocasio, 30, was pulled over and was arrested after he refused to take a breath test, authorities said. Police charged him with resisting arrest, driving while intoxicated and refusal to take a breath test.

g.  Also on November 16, 2012, NYPD Police Officer Ismile Althaibani, 29, was pulled over at about 3 a.m. and ultimately charged with driving under the influence.

h.  In July 2012, NYPD Police Officer Elvis Garcia, 27, who had been on the job for just a year, was driving his personal vehicle about 5:45 a.m. when he was involved in a two-car crash. He was subsequently charged with driving while intoxicated.

i.  In July 2012, NYPD Police Officer Salisha Alirasul, 34, was arrested for DWI.

j.  In July 2012, NYPD Police Officer Brayan Terrazas, 26, was arrested for DWI.

k.  On February 27, 2012, NYPD Police Officer Christopher Morris, 31, was driving a marked squad car when he lost control and smacked into a light pole in East New York about 4 a.m. He was charged with driving while intoxicated.

l.  In December 2011, NYPD Police Officer Rafael Casiano, 44, was driving on a Bronx expressway at about 4:30 a.m. Friday when his car smashed into a center divider. The passenger was another off-duty NYPD Police Officer, Keith Paul, who suffered a head wound and had to be hospitalized. They were coming home from their Manhattan precinct Christmas Party.

m.  In December 2011, NYPD Police Officer Kleaburgh Carvajal was charged with DWI.

n.  In March 2011, NYPD Police Officer Sergio Gonzalez drove under the influence of alcohol or drugs and crashed into the rear of an NYPD patrol car before finally being handcuffed.

o.  In October 2009, NYPD Detective Kevin Spellman was sentenced to three to nine years in prison for the drunk-driving death of a Bronx grandmother.

p.  In 2009, off-duty NYPD Police Officer Andrew Kelly struck a girl with his car in Brooklyn. Kelly pleaded guilty to driving drunk, served 90 days in jail and went to rehabilitation.

q.  In 2001, an off-duty NYPD Police Officer who spent up to 12 hours drinking before going to his Brooklyn precinct struck and killed a 24-year-old pregnant woman, her 4-year-old son, and her 16-year-old sister. Medical staff delivered the woman's baby boy, who died 13 hours later, and NYPD Police Officer Joseph Gray was eventually convicted of four counts of second-degree manslaughter. He was sentenced to 5 to 15 years in prison. The event "mushroomed into scandal" when it was discovered that other officers were drinking with Gray in a topless bar at a nearby precinct parking lot before the incident.

r.  On May 18-20, 1995, NYPD Police Officers, staying at the Hyatt Regency Hotel in Washington, D.C., disrobed, poured beer down the lobby escalator and then slid down it. Some sprayed fire extinguishers at each other and at other guests, set off false alarms and vandalized the hotel. Other reports involve armed officers in uniform drinking heavily and firearms being discharged from a hotel. Officers also allegedly tried to gain entry to women's rooms by posing as Federal agents and harassed female guests.

55.  Defendant City, as a matter of policy and practice, has with deliberate indifference, failed to adequately discipline, train, monitor, treat or otherwise direct police

officers, including the Defendant police officers, with regard to the retention of police officers like Hieu Tran who were known to be dangerous.

56.    Defendant City has also failed to adequately create and/or enforce policies and procedures that address the NYPD employees' substance abuse, including alcohol consumption, and its causal relationship to the misuse of firearms by on-duty and off-duty police officers. This deliberate indifference was a proximate cause of Defendant Officer Tran's actions on May 17, 2024.

57.    Defendant New York City, as a matter of policy and practice, has with deliberate indifference, failed to properly investigate the background, beliefs and attitudes of prospective police officers in order to ensure it hires only police officers that respect and honor the constitutional rights of individuals, thereby causing the NYPD, including its Defendants in this case, to engage in the unlawful conduct described above.

58.    Defendant New York City, as a matter of policy and practice, has with deliberate indifference, failed to properly screen police applicants for a history of, or propensity for, substance abuse, including alcohol.

**DAMAGES**

59.    The unlawful, intentional, willful, deliberately indifferent, negligent, grossly negligent and reckless acts and omissions of the Defendants herein caused Mr. Patel to suffer catastrophic and permanent injuries that will affect him for the remainder of his life. These injuries have already necessitated the expenditure of hundreds of thousands of dollars in just the short time since these horrific events have occurred. That number will undoubtedly balloon into

the tens of millions as Mr. Patel will forever be dependent on machines and skilled care providers for every aspect of his survival.

60.    A bullet fired by Officer Tran entered Mr. Patel's skull just behind his right ear. That bullet caused the following:

      a.  Open fracture of right temporal bone;

      b.  Pressure ulcer of the head;

      c.  Acute blood loss;

      d.  Seizure;

      e.  Respiratory failure;

      f.  Anoxic brain injury;

      g.  Fracture of C1 vertebra;

      h.  Fracture of occipital bone

61.    As a direct result of the above incident, Mr. Patel was caused to suffer excruciating and conscious pain and suffering, including mental and psychological torment, which endure to this day and will continue for the rest of his life. He has also been caused to suffer economic damages in the form of medical expenses that will continue for the rest of his life. Mr. Patel was the manager and co-owner of his parents' successful business operation. As a direct and proximate result of this incident, Mr. Patel will now be dprived of the economic opportunities and benefits that accompany owning a successful business.

62.    Notices of Claim pursuant to New York General Municipal Law § 50-e was timely served upon Defendant City on July 30, 2024. More than thirty days have elapsed without the matter being resolved by the City. The Notices of Claim provided detailed information regarding the actions of the City and police personnel involved in the incident underlying the

instant action and was sufficient to put the police personnel and the City on notice of the conduct in which they are alleged to have engaged.

## **FEDERAL CLAIMS FOR RELIEF**

### **FIRST CLAIM FOR RELIEF**
*42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments*

63.    Plaintiff hereby incorporates by reference all previous paragraphs as though fully set forth herein.

64.    Defendant Hieu Tran, under color of law and with the indicia of authority of a New York City Police Officer, violated Plaintiff Kishan Patel's due process rights to be free from the unreasonable and unnecessary use of excessive force, unreasonable seizures, and to bodily integrity.

65.    Defendants Police Officers John Doe 1-10, under color of law and with the indicia of authority of New York City Police Officers, violated Plaintiff Kishan Patel's due process rights to be free from unreasonable seizure, excessive force and to bodily integrity by encouraging, and failing to intervene to prevent, the actions of Defendant Officer Hieu Tran knowing that he was dangerously unsafe and in possession of his service weapon while unfit for duty.

66.    Each of the Defendants' actions directly and proximately caused Plaintiff Kishan Patel's injuries.

67.    By these acts, omissions and conduct, these individual Defendants have deprived the Plaintiffs of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983, for which the Defendants are individually liable.

## SECOND CLAIM FOR RELIEF
*Monell Claims for Municipal Liability Against Defendant New York City*

68.    Plaintiff hereby incorporates by reference all previous paragraphs as though fully set forth herein.

69.    Defendants City, Mayor Adams and Comm. Caban, as the police department's final policymaker, are responsible for the NYPD's policy, practice and custom of being deliberately indifferent to the continued hiring and retention of Hieu Tran and other armed employees of the NYPD who are known, because of alcohol dependency and/or mental illness to be a lethal threat to themselves and those around them.

70.    Defendant City, and NYPD policymakers Defendants Mayor Adams and Comm. Caban, knew of the longstanding problem of hiring and retaining officers who had alcohol dependency and/or mental illness which rendered them unfit for duty, and despite this knowledge, left Officer Tran in possession of his service weapon.

71.    Said Defendants knew or should have known that the failure to adequately address alcohol and substance abuse within the department had caused problems in the past, and would continue to cause problems in the future, including violations of constitutional rights because of the failure to adopt and implement adequate policies, procedures and practices and to adequately screen, train, supervise and/or discipline police officers engaging in, or likely to engage in, such behavior.

72.    This deliberate indifference on the part of the City, Mayor Adams and Comm. Caban directly and proximately caused the deprivation of Plaintiff Joseph Felice's constitutional

rights secured by the Fourth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. §1983.

## THIRD CLAIM FOR RELIEF
*Supervisory Liability*

73.     Plaintiff hereby incorporates by reference all previous paragraphs as though fully set forth herein.

74.     Defendants Police Officer John Does 1-10 directly and personally participated in the events that were the proximate cause of the Plaintiff's injuries.

75.     Defendants Police Officer John Does 1-10 directly and knowingly, and with a grossly negligent derogation of their duty, encouraged and facilitated Officer Tran who was under their supervision to remain on the force and armed with his service-issued weapon despite knowledge of his alcohol dependency and other mental health impediments.

76.     Said defendants were grossly negligent when they failed to properly hire, train, supervise and discipline Officer Tran, despite knowledge that the Officer was unfit for duty and presented a danger to himself and those around him.

77.     As a direct and proximate result of Police Officer John Does 1-10 failure to supervise their subordinates, particularly Officer Tran, Plaintiffs' constitutional rights were violated as aforementioned in violation of 42 U.S.C. § 1983.

78.     As a direct and proximate result of the aforementioned actions and/or inactions of said Defendants, Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments were violated by said Defendants.

## STATE LAW CLAIMS FOR RELIEF

### FOURTH CLAIM FOR RELIEF
*Respondeat Superior Liability against Defendant New York City*

79.     Plaintiff hereby incorporates by reference all previous paragraphs as though fully set forth herein.

80.     At all times pertinent hereto, Defendants Officer Tran, Mayor Adams, Comm. Caban, Police Officers John Doe 1-10 and were acting within the scope of their employment as officers of the NYPD. Defendant City, through its agents, expressly authorized the individual Defendants Officer Tran, Mayor Adams, Comm. Caban, and Police Officers John Doe 1-10, to violate Plaintiffs constitutional rights, as described above.

81.     Defendant City knew, through its agents and through the NYPD's derogation of duty, that Defendants Tran and Police Officer John Does 1-10 had a propensity for committing such illegal acts in the line of duty, and acquiesced in the Defendants' wrongful conduct.

82.     Defendant City is thus liable under the doctrine of *respondeat superior*, for the intentional and negligent torts of Defendants Officer Tran, Mayor Adams, Comm. Caban, and Police Officers John Doe 1-10, which were committed within the scope of their employment.

### FIFTH CLAIM FOR RELIEF
*Negligence*

83.     Plaintiff hereby incorporates by reference all previous paragraphs as though fully set forth herein.

84.     Defendants Officer Tran and Police Officers John Doe 1-10, while acting as employees for New York City, owed a duty to Plaintiffs to perform their duties without violating Plaintiffs constitutional rights.

85.     Defendant Officer Tran abused alcohol both on-duty and off-duty, violated his 24 hours a day requirement to be fit for duty and possessed and used firearms while unfit for duty. These violations were proximate causes of the unlawful and unnecessary use of force against Plaintiff Kishan Patel and constitutes negligence for which the Defendants are liable.

### SIXTH CLAIM FOR RELIEF
*For Assault and Battery against Defendant Tran*

86.     Plaintiff hereby incorporates by reference all previous paragraphs as though fully set forth herein.

87.     The actions of Defendant Officer Tran were intentional, malicious, and were committed with wanton disregard and with depraved indifference to the Plaintiff's rights.

88.     The actions of said Defendants constituted unwarranted, unreasonable, unnecessary and excessive use of force against Plaintiff Kishan Patel who was simply an unsuspecting civilian returning home from work.

89.     The actions aforesaid constituted assault and battery against Plaintiff Kishan Patel.

90.     As a result of the conduct herein by the said Defendant, Kishan Patel suffered and continues to suffer severe physical, psychological, emotional, and economic injuries.

### PUNITIVE DAMAGES

91.     Plaintiff hereby incorporates by reference all previous paragraphs as though fully set forth herein.

92.     The acts of the individual Defendants were willful, wanton, malicious and

oppressive. These acts were without any justification and caused Plaintiffs severe and ongoing suffering. Such acts therefore warrant an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

a. Compensatory damages in an amount to be determined at trial;

b. Punitive damages in an amount to be determined at trial;

c. An award of the costs and expenses of this action including attorneys' fees to the Plaintiffs pursuant to 43 U.S.C. §1988; and

d. Any such other and further relief as this Court may deem appropriate.

## **A JURY TRIAL IS DEMANDED**

Date:    October 3, 2024                         Respectfully submitted,

                                                 MARRONE LAW FIRM, LLC


                                    By:     S/ Joseph M. Marrone
                                            Joseph M. Marrone, Esquire
                                            200 South Broad, Ste. 610
                                            Philadelphia, PA. 19102
                                            (215) 732-6700 – Phone
                                            (215) 732-7660 – Fax
                                            jmarrone@marronelaw.com