UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                          :

MANJINA PATEL, as the guardian of KISHAN    :
PATEL, an incapacitated person,                :

                                          :          24-CV-7428 (JAV)
                          Plaintiff,         :          24-CV-8509 (JAV)
                                          :

       -v-                                   :      **OPINION AND**
                                          :         **ORDER**

THE CITY OF NEW YORK, POLICE OFFICER    :
HIEU TRAN, MAYOR ERIC ADAMS,           :
COMMISSIONER EDWARD CABAN, AND      :
POLICE OFFICERS JOHN DOE 1-10,        :

                                          :

                        Defendants.      :
-------------------------------------------------------------------X
                                          :

STEPHANIE HUMMEL,                   :

                                          :

                              Plaintiff,         :

                                          :

       -v-                                   :

THE CITY OF NEW YORK, POLICE OFFICER    :
HIEU TRAN, MAYOR ERIC ADAMS,           :
COMMISSIONER EDWARD CABAN, AND      :
POLICE OFFICERS JOHN DOE 1-10,        :

                                          :

                        Defendants.      :
-------------------------------------------------------------------X

**JEANNETTE A. VARGAS, United States District Judge:**

       While stopped at an intersection, Plaintiff Kishan Patel was shot in the head

by New York City Police Department Officer Hieu Tran. Patel's car subsequently

swerved into oncoming traffic and struck Plaintiff Stephanie Hummel's vehicle,

injuring her. Both Plaintiffs filed complaints against Police Officer Hieu Tran, the

City of New York (the "City"), Mayor Eric Adams, and Commissioner Edward

Caban (together with the City and Adams, the "City Defendants"); and Police

Officers John Doe 1-10 ("Defendant Officers"). The City Defendants now move to

dismiss the claims asserted against them in this consolidated action. At the same

time, Plaintiffs seek leave to amend their Complaints to add additional state law

claims. For the reasons herein, the Court GRANTS the City Defendants' motion to

dismiss and GRANTS Plaintiffs' motion for leave to amend.

## BACKGROUND

### A. Factual Background

The following allegations are taken from the First Amended Complaint in the

*Patel* action and the Second Amended Complaint in the *Hummel* action (together,

the "Complaints"), and are assumed true for purposes of this motion. On May 17,

2024, Kishan Patel was shot in the head by New York City Police Department

("NYPD") Officer Hieu Tran in south New Jersey with a 9mm service pistol. ECF

No. 36 ("Patel FAC") ¶¶ 1, 3, 4, 23.

At approximately 11:00 PM, Patel was alone in his vehicle, driving home

northbound on Route 73. *Id.* ¶ 23. He hit a red light at the intersection with

Cooper Road, at which point he stopped in the left lane. *Id.* While Patel's pickup

truck was waiting for the light to turn green, a white SUV being driven by Tran

pulled up next to Patel's vehicle. *Id.*

At the time of the shooting, Tran was off duty. Tran lived in Yonkers, New

York, but had attended a wedding earlier that evening in Sicklerville, New Jersey.

*Id.* ¶ 31. To attend the wedding, he drove himself to and from home in his own

vehicle. *Id.* ¶ 32. He was alone in the car. *Id.* ¶ 37. He was also intoxicated. *Id.* ¶ 43.

According to video footage which showed the two cars at the intersection, Patel and Tran were only stopped next to each other for a moment. *Id.* ¶ 25. And in that moment, Tran, for reasons that may never be known, shot Patel in the head with his service weapon. *Id.* ¶¶ 1, 4. Three shell casings matching Tran's weapon were later found at the intersection, suggesting that Tran discharged his weapon at least three times. *Id.* ¶ 5.

Patel sped "uncontrollably through the intersection" before the light turned green, drove into oncoming traffic, and violently struck other vehicles, including Hummel's. ECF No. 40 ("Hummel SAC") ¶ 24. As a result of the collision, Hummel was "severely and catastrophically injured." *Id.* ¶ 26. Following the encounter with Patel, Tran "drove north, stopped for gas, went home to New York, reloaded his weapon and went to work the next day like nothing had happened," leaving Patel to bleed "uncontrollably in the cab of his pickup truck" due to his severe gunshot wound. Patel FAC ¶ 4; Hummel SAC ¶ 4.

Plaintiffs aver that, prior to the accident, the City was aware that Tran had "significant mental health challenges with longstanding alcoholism." Patel FAC ¶ 2. At a pre-trial detention hearing for Tran held before the New Jersey Superior Court, the judge reviewed evidence that included a psychological evaluation that determined that Tran was in a "downward spiral" and that his NYPD supervisors were aware of his "long-term alcoholism and job-related PTSD." Patel FAC ¶ 6;

3

Hummel SAC ¶ 41; *see also* ECF No. 2, Ex. A at 22-24.  Despite these struggles, Tran was issued a 9mm service pistol, which was the weapon that ultimately injured Patel.  Patel FAC ¶¶ 2-3.  After serving in Harlem for less than three years, Tran was reassigned to the office of the Deputy Commissioner of Public Information, which Plaintiffs allege is a "well-known repository for NYPD employees who have committed acts of misconduct but, for some reason, are not removed from the NYPD altogether."  *Id.* ¶ 2.  Moreover, his assignment to the office was "highly unusual because of his notable lack of experience."  *Id.*  Plaintiffs also emphasize that Tran was never suspended from the force or required to surrender his service weapon.  *Id.* ¶ 3.

As a result of the accident, Plaintiff Patel "suffered an anoxic brain injury," and "will require 24/7 skilled nursing care for the rest of his life as he is now a quadriplegic."  *Id.* ¶ 1.  Plaintiff Hummel sustained "serious, disabling and permanent personal injuries," "suffered a significant loss of life's pleasures," and suffers from "severe embarrassment and humiliation."  Hummel SAC ¶ 60.

### B.  Procedural History

Manjina Patel, as guardian of Patel, commenced the *Patel* action on October 1, 2024, against Tran, the City, Mayor Eric Adams, Commissioner Edward Caban, and Defendant Officers.  *See* ECF No. 2.  Patel's Complaint asserted three claims under 42 U.S.C. § 1983, state law claims related to negligence and *respondeat superior* liability, and an assault and battery claim against Tran.  *Id.*  Hummel filed her complaint on November 8, 2024, asserting three federal claims under 42 U.S.C.

§ 1983.  *See* No. 24-CV-8509-JAV, ECF No. 1.  On January 15, 2025, the Court ordered the pre-trial consolidation of the *Patel* and *Hummel* actions and provided Plaintiffs the opportunity to file amended complaints by March 3, 2025, after the City Defendants submitted their motion to dismiss.  ECF No. 30.  In that order, the Court warned Plaintiffs that the Court was disinclined to allow further opportunity to amend the Complaints in response to issues raised by the City Defendants' motion to dismiss.  *Id.*

On February 3, 2025, the City Defendants filed a motion to dismiss the Complaints, challenging the facial plausibility of the federal causes of actions and arguing that there is no *respondeat superior* liability because Tran was acting outside the scope of his employment.  ECF No. 35.  The City Defendants' motion did not address the sufficiency of the pleading of the negligence or assault and battery claims in the *Patel* Complaint.

A First Amended Complaint was filed in the *Patel* action on March 3, 2025, which expanded upon the *respondeat superior* liability claim against the City.  ECF No. 36.  Hummel was given leave by the state court on March 11, 2025, to serve a late notice of a claim of negligence against the City Defendants.  No. 24-CV-8509-JAV, ECF No. 25, Exs. 3-4.  Hummel filed a Second Amended Complaint on April 3, 2025, that added *respondeat superior* and negligence claims largely duplicative of the claims asserted in the First Amended *Patel* Complaint.  ECF No. 40.

The Complaints assert three claims under 42 U.S.C. § 1983.  Count I of the Complaints asserts that Tran violated Plaintiffs' Fourth and Fourteenth

Amendment rights by subjecting them to excessive force and unreasonable seizure.
Patel FAC ¶¶ 64-68; Hummel SAC ¶¶ 66-70.  They further allege that Defendant
Officers, unknown officers who were Tran's supervisors at the NYPD, also violated
their Fourth and Fourteenth Amendment rights by "encouraging, and failing to
intervene to prevent" Tran's actions.  Patel FAC ¶¶ 66-68; Hummel SAC ¶¶ 68-70.
Count II brings *Monell* claims for municipal liability against the City, Mayor
Adams, and Commissioner Caban.  Patel FAC ¶¶ 69-73; Hummel SAC ¶¶ 71-75.
Count III brings a supervisory liability claim against Defendant Officers for
allowing Tran to stay on the force and carry a service weapon despite knowledge of
his alcoholism and mental health challenges.  Patel FAC ¶¶ 74-79; Hummel SAC ¶¶
76-81.

The Complaints likewise assert causes of action under state common law.
Count IV includes a claim for *respondeat superior* liability against the City.  Patel
FAC ¶¶ 80-84; Hummel SAC ¶¶ 82-86.  Count V asserts a claim for common law
negligence against Tran and the Defendant Officers.  FAC ¶¶ 85-87; Hummel SAC
¶¶ 87-89.  Patel additionally asserts a claim for assault and battery against Tran.
Patel FAC ¶¶ 88-92.

The City Defendants filed a motion to dismiss the claims asserted against
them in the Complaints pursuant to the Federal Rule of Civil Procedure 12(b)(6) on
April 3, 2025.  ECF Nos. 41-43.

On April 23, 2025, Plaintiffs filed a motion to amend their Complaints, ECF
No. 48, which the City Defendants opposed.  Plaintiffs sought leave to amend to add

a new negligent hiring and retention claim and to address potential deficiencies in the negligence claim that were identified by counsel for the City Defendants. *Id.* ¶¶ 13-14.

On May 6, 2025, Plaintiffs filed a new action, Docket No. 25-CV-3754 (the "Second Action"), arising out of the same set of facts as the pending case, but which asserted additional state law negligence claims against the City Defendants. ECF No. 1. Plaintiffs informed the Court of the filing of the Second Action and withdrew the motion for leave to amend their pleadings. ECF No. 52. The City Defendants opposed on the grounds that the filing of the Second Action raises a claim-splitting issue. ECF No. 50. The Court heard oral arguments from both parties concerning the issue at a conference for the above-captioned case on June 23, 2025.

The Court issued an Order in the Second Action on July 15, 2025, for Plaintiffs to show cause why the Court should not dismiss the new action on the grounds of impermissible duplicity. No. 25-CV-3754, ECF No. 25. On July 31, 2025, Plaintiffs filed a letter acknowledging that the Second Action "has appropriately given rise to concerns regarding duplicative litigation," requesting a stay of the Second Action, and indicating their intent to re-file a motion for leave to amend in this immediate action. No. 25-CV-3754, ECF No. 26. Plaintiffs re-filed a motion for leave to amend in this action on the same day, ECF No. 59, which Defendants opposed, ECF No. 60. On August 6, 2025, the Court granted the stay of the Second Action. No. 25-CV-3754, ECF No. 27.

## LEGAL STANDARDS

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the non-moving party. *Romanova v. Amilus Inc*, 138 F.4th 104, 108 (2d Cir. 2025). The court, however, does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (quotation marks omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge plaintiff's claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (cleaned up); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

## DISCUSSION

### I. The Section 1983 Claims Are Dismissed for Failure to State a Claim

Section 1983 provides a "civil cause of action against a party 'who, under color of any statute, ordinance, regulation, custom, or usage, of any State,'" deprives another of rights secured by the United States Constitution or federal law. *Claudio v. Sawyer*, 675 F. Supp. 2d 403, 407 (S.D.N.Y. 2009), *aff'd*, 409 F. App'x 464 (2d Cir.

2011) (cleaned up). Section 1983 therefore requires that "(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

To hold a municipality liable under Section 1983 for a constitutional violation committed by one of its employee, an additional element must be present: the "deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Thus, *Monell* liability requires both that an employee acts under color of law when committing the constitutional violation *and* a plausible allegation that the plaintiffs' constitutional rights were deprived as the result of an "official policy or custom of the City." *Albert v. City of New York*, No. 17-CV-3957-ARR-SMG, 17-CV-04315 (ARR) (SMG), 2018 WL 5084824, at *4 (E.D.N.Y. Oct. 18, 2018) (quoting *Stoeckley v. City of New York*, 700 F. Supp. 2d 489, 494 (S.D.N.Y. 2010)). Accordingly, "courts frequently bifurcate their consideration of a *Monell* claim, only reaching the adequacy of a plaintiff's policy or custom allegations if they find that the plaintiffs have alleged an

underlying constitutional violation committed by a state actor." *Albert*, 2018 WL 5084824, at *5 (cleaned up).

Both Plaintiffs bring Section 1983 claims against the City for deprivation of their "due process rights to be free from the unreasonable and unnecessary use of excessive force, unreasonable seizures, and to bodily integrity." Patel FAC ¶ 65; Hummel SAC ¶ 67. In this case, the Court need not reach the policy or custom prong of *Monell*. Because Tran was not acting under color of state law at the time of the shooting, the Plaintiffs' Section 1983 claims cannot survive.

**A. Color of Law**

For liability to attach under Section 1983, Tran must have been acting under color of law by "invok[ing] the real or apparent power of the police department, or perform[ing] duties prescribed generally for police officers." *Wahhab v. City of New York*, 386 F. Supp. 2d 277, 287-88 (S.D.N.Y. 2005); *see also Claudio*, 675 F. Supp. 2d at 410 ("Second Circuit case law holds that where an off-duty officer did not act under color of law, the injury inflicted on the victim is one of private violence."). "[T]here is no bright line test for distinguishing 'personal pursuits' from activities taken under color of law." *Pitchell*, 13 F.3d at 548 (citations omitted). The relevant question, however, in deciding a police officer defendant's Section 1983 liability is not whether the officer "was on or off duty when the challenged incident occurred," but whether "the totality of the circumstances surrounding the officer's acts, with attention to the nature of the officer's acts (rather than simply the officer's duty status) and the relationship of that conduct to the officer's official duties"

demonstrate that the officer acted under color of law. *Claudio*, 675 F. Supp. 2d at 408 (cleaned up). Although none are determinative, factors for consideration include "'whether defendants identified themselves as police officers at any time during the incident; if plaintiff was aware that the defendants were police officers; whether defendants detained or questioned the plaintiff in the line of duty or scope of employment as police officers; if defendants drew a firearm or arrested the plaintiff; whether defendants were engaged in any investigation or any aspect of the traditional public safety functions of police work.'" *Id.* (quoting *Wahhab*, 386 F. Supp. 2d at 288).

The City Defendants contend that Tran could not have been acting under color of law because, at the time of the incident, he was "off-duty, out-of-state, drunk, in his own vehicle, and clearly not 'engaged in an investigation or other traditional police public safety function.'" ECF No. 43 ("Defs. Mot.") at 7.

Plaintiffs do not dispute that Tran was engaged in personal pursuit at the time of the shooting, but assert that he invoked his apparent authority as a police officer to aid in his attack on Tran. ECF No. 49 ("Pls. Opp.") at 7. They point to the allegation in the Complaint that at the time of the shooting, "Tran identified himself to []Patel as an NYPD Officer by his words and other conduct, including but not limited to the brandishing of his NYPD service weapon and/or NYPD credentials, and did otherwise establish his apparent authority as an NYPD police officer and employee." Patel FAC ¶ 26; Hummel SAC ¶ 25. Plaintiffs aver that "[t]he words and conduct of Defendant Tran would have caused a reasonable person

to believe that Tran was acting under color of law and within the course and scope
of his authority as an employee and agent of the NYPD." *Id.*

This conclusory allegation does not suffice to demonstrate that Tran was
acting under color of law. The Complaints do not set forth the specific words or
actions transpired between the two that would purportedly have led a reasonable
person to believe Tran was invoking his apparent authority as a police officer.

Tran was not in uniform. He was not driving his police vehicle. He was not
in his jurisdiction. There are no known prior encounters between Tran and Patel.
There are no allegations as to what words, if any, passed between Tran and Patel
before the shooting. There is nothing in the Complaint to indicate that Tran was
attempting to arrest Tran or use his apparent authority as a police officer to pull
him over.

To the contrary, according to the video footage, only a "moment" passed
between the time that Tran pulled his car alongside Patel and the shooting. Patel
FAC ¶ 25; Hummel SAC ¶ 24. Plaintiffs do not elaborate exactly how long "a
moment" is, so the Court cannot determine on the face of the Complaints whether
the duration of time was sufficient for Tran to exchange any words or gestures with
Patel, or even to show his NYPD badge, before Patel was shot. *Cf. Rivera v. La
Porte*, 896 F.2d 691, 692 (2d Cir. 1990) (finding an off-duty officer acted under the
color of law where, during a private traffic dispute with plaintiff, he identified
himself as a police officer and arrested plaintiff); *Jocks v. Tavernier*, 316 F.3d 128,
134 (2d Cir. 2003) (finding there was "no doubt" that an officer acted under color of

law where, according to the officer's own testimony, he identified himself as a police officer and drew his service pistol).

Although the Complaints state that Tran identified himself as a police officer, they allege he did so by either brandishing his service weapon <u>or</u> his credentials. There is thus no unequivocal allegation that Tran showed his credentials to Patel.[1] Absent such allegation, Plaintiffs have failed to plead facts in their amended complaint sufficient to support their claims that Tran invoked his apparent authority as a police officer.

Although Plaintiffs allege that Tran used his service weapon to shoot Patel, Patel FAC ¶ 5; Hummel SAC ¶ 5, that alone is insufficient for the Court to "hold that an off-duty officer was acting under color of law without more indicia of authority," *Claudio*, 675 F. Supp. 2d at 409-10. Courts, including the Second Circuit, have repeatedly held that simply brandishing or using a service weapon is insufficient to invoke the power of the police department. *See, e.g.*, *Bonsignore v. City of New York*, 683 F.2d 635 (2d Cir. 1982) (finding that an officer who shot his wife with his police handgun did not act under color of law); *Claudio*, 675 F. Supp. 2d at 409-10 ("The mere use of a department-issued weapon is not sufficient to hold that an off-duty officer was acting under color of law without more indicia of authority.").

---

[1] Plaintiffs conceded at oral argument that they do not have a factual basis for the allegation that Patel brandished his credentials, and that this assertion in the Complaints is based on speculation as to what could have occurred at the intersection.  ECF No. 61 at 27:5-23.

Because Plaintiffs have failed to sufficiently allege that Tran acted under color of law, Plaintiffs' Section 1983 claims against the City[2] for *Monell* municipal liability in Count II of the Complaints fails.  A *Monell* claim must be premised on an independent constitutional violation by a state actor.  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).  There is no separate cause of action for the government's failure to train or implement policies or customs that led to the alleged constitutional violation.  *Id.*

The City cannot be held liable under *Monell* for Tran's "act of private violence."  *Claudio*, 675 F. Supp. 2d at 410.  Having found no constitutional violation by a state actor, the Court therefore need not address the sufficiency of the customs and practices allegations in the Complaints.  *Goe v. Zucker*, 43 F.4th 19, 34 (2d Cir. 2022 ("[A]s the district court correctly concluded that the FAC failed to plausibly allege any underlying constitutional violations, it did not err in dismissing the municipal liability claims . . . .").

---

[2] Plaintiffs also name Mayor Adams and Commissioner Caban as defendants with respect to these claims, presumably in their official capacity.  Official capacity suits are the functional equivalent of a suit brought against the sovereign itself, rather than the employee.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." (cleaned up)).  To the extent that Plaintiffs attempt to bring *Monell* claims against Mayor Adams and Commissioner Caban in their individual capacities, the claims must be dismissed for the additional reason that *Monell* claims can only be brought against the municipal entity.  *Acquah for J.B. v. City of Syracuse*, No. 18-CV-1378 (LEK) (DEP), 2020 WL 1510405, at *2 (N.D.N.Y. Mar. 30, 2020) ("*Monell* does not apply to . . . individuals who are sued in their individual capacity.").

**B. Supervisory Liability**

The third Count of the Complaints asserts "supervisory liability" under Section 1983.  Patel FAC ¶¶ 74-79; Hummel SAC ¶¶ 76-81.  Such a claim is not cognizable and must be dismissed.

Section 1983 does not permit *respondeat superior* liability.  *See, e.g.*, *Iqbal*, 556 U.S. at 676.  Accordingly, "it is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Sash v. United States*, 674 F. Supp. 2d 531, 542 (S.D.N.Y. 2009) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)); *see also Wiggins v. Griffin*, 86 F.4th 987, 996 (2d Cir. 2023).  It is insufficient to show that a defendant ultimately supervised the state actor who allegedly committed the constitutional violation.  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  Instead, to attach "supervisory liability" under Section 1983, "a plaintiff must show the defendant's personal involvement in the alleged constitutional violations."  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  As no such personal involvement in the constitutional violation has been plead, the supervisory liability claims must be dismissed.

Such claims fail for the additional reason that, as stated *supra*, Plaintiffs have failed to sufficiently allege that Tran acted under color of law and that an independent constitutional violation occurred.  *See Bastuk v. Cty. of Monroe*, 628 F. App'x 4, 6-7 (2d Cir. 2015) (affirming district court's dismissal of supervisory liability claim where no constitutional violation found); *Blyden v. Mancusi*, 186 F.3d

252, 265 (2d Cir. 1999) ("Of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation.").

## II.   Plaintiff's State Law Claims Against the City Defendants Are Dismissed for Failure to State a Claim

In addition to the federal claims, the Complaints allege *respondeat superior* claims against the City and negligence claims against Tran and Defendant Officers under state law.[3]  The City Defendants argue that the Court should "decline to exercise jurisdiction" over the state law claims if the federal claims are dismissed. ECF No. 43 at 14.  They argue in the alternative that the remaining cause of action against the City Defendants should be dismissed for failure to state a claim.

While the Court may decline to exercise supplemental jurisdiction over state claims where its jurisdiction rests on a federal question, *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998); *Torres v. City of New York*, 248 F. Supp. 2d 333, 334 (S.D.N.Y. 2003), the City Defendants' argument ignores that this Court retains original jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332.  *See also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.").  The Complaints plead that Plaintiffs are both residents of New Jersey, while Defendants are residents of New York.  *See* Patel FAC ¶¶ 14, 16-20; Hummel SAC ¶¶ 14, 15-19.  The state law claims cannot be dismissed for lack of jurisdiction.

---

[3] Plaintiff Patel also alleges a state law tort claim against Tran for assault and battery.

The Court therefore considers whether the *respondeat superior* claim is adequately plead.  Under New York law, employers are liable under a *respondeat superior* theory "where the employee acts in furtherance of the employer's business and the employer was or could have been exercising some control, either directly or indirectly, over the employee's activities.  *Wahhab*, 386 F. Supp. 2d at 290.  The relevant question is "whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979).  This includes both acts done at the employer's explicit instruction, as well as "any act which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute" of employment.  *Id.* at 303 (cleaned up).  Among the factors to be considered in determining if an act was taken in the scope of employment are "the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated."  *Id.*  "An employee must also act at least 'in part to benefit the employer.'" *Agyin v. Razmzan*, 986 F.3d 168, 185 (2d Cir. 2021) (citation omitted).

This analysis is distinct from the color of law analysis under Section 1983. *Wahhab*, 386 F. Supp. 2d at 290.  "The rules concerning scope of employment dictate that where an employee's conduct is brought on by a matter wholly personal in nature, the source of which is not job-related, his actions cannot be said to fall

within the scope of his employment." *Id.* (cleaned up). Yet, "even if an employee's actions are driven by personal motives, intentional torts may still fall within the scope of employment." *Muniz v. Orange County*, 22-CV-529 (NSR), 2024 WL 1142550, at *5 (S.D.N.Y. Mar. 14, 2024); *see also Rivera v. State*, 34 N.Y.3d 383, 389 (2019) ("[T]he employer may be liable when the employee acts negligently or intentionally, so long as the tortious conduct is generally foreseeable and a natural incident of the employment.").

Especially for a case that involves the use of force, "whether an employee is acting within the scope of employment requires consideration of whether the employee was authorized to use force to effectuate the goals and duties of the employment." *A.W. by E.W. v. New York Dep't of Educ.*, 702 F. Supp. 3d 46, 53 (E.D.N.Y. 2023) (quotations and citations omitted). "Importantly, the use of a weapon owned or authorized by the employer is not enough by itself to give rise to respondeat superior liability for an employer." *Albert*, 2018 WL 5084824, at *12 (citing *Longin by Longin v. Kelly*, 875 F. Supp. 196, 202 (S.D.N.Y. 1995)).

The Court agrees with the City Defendants that the allegations in the Complaints fail to show that Tran was "furthering police business" rather than acting for his own personal reasons. *Mahmood v. City of New York*, No. 01-CV-5899 (SAS), 2003 WL 21047728, at *3 (S.D.N.Y. May 8, 2003). According to Plaintiffs' own allegations, Tran was in his personal vehicle driving home from a wedding while off-duty. FAC ¶¶ 23, 31; Hummel SAC ¶¶ 24, 30. Tran then shot at Patel multiple times within moments of pulling up next to him at an intersection.

FAC ¶¶ 1, 3, 4, 25; Hummel SAC ¶¶ 1, 3, 4, 24.  No motive is offered for Tran's horrific acts.  There is nothing to indicate, for example, that the incident arose out of an attempt to enforce the traffic laws or an aborted arrest.  Under these facts, no reasonable inference can be drawn that Tran acted to advance a law enforcement goal or that he intended to benefit the NYPD.  *See Rivera*, 34 N.Y.3d at 390 (holding, as a matter of law, that on-duty corrections officers who assaulted prisoners were not acting within scope of their employment, as a "brutal beating can be characterized neither as an irregular performance of duty nor a mere disregard of instructions" and such an "egregious" attack could not be "in furtherance of any employer-related goal whatsoever").

The fact that Tran allegedly used a service weapon is not enough to give rise to *respondeat superior* liability.  And even if Tran had demonstrably identified himself as a police officer to Patel during the incident, this would not be sufficient to show that "he was furthering the City's interest in maintaining law and order" and acting within the scope of his duty.  *Mahmood*, 2003 WL 21047728, at *3.

Plaintiffs do not offer any counterarguments.  They instead state that "plaintiffs' negligence claims do not depend" on whether Tran was acting within the scope of employment.  Opp. Br. at 18.  This is a non-sequitur.  Plaintiffs did not assert negligence claims against the City Defendants in the Complaints, only against Tran and the John Doe Defendant Officers.  And the *respondeat superior* claims, which were brought against the City, do require a showing that Tran was acting within the scope of his employment at the time of the shooting.

Accordingly, Plaintiffs' state law *respondeat superior* liability claims against the City fail.

### III.  Plaintiffs' Motion to Amend the Complaints

Plaintiffs move to amend the Complaints to assert a new negligent supervision and retention claim against the City Defendants and to buttress their existing negligence claim.  ECF No. 59.  While leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  In light of the Rule's liberal amendment standard, "courts in this Circuit typically allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Reid v. City of New York*, No. 20 Civ. 9243 (KPF), 2024 WL 749620, at *4 (S.D.N.Y. Feb. 23, 2024) (cleaned up).

The City Defendants argue that permitting another round of amendments after the City Defendants have already filed two dispositive motions prejudices them by making the claims in this case a moving target.  ECF No. 60 at 3.  The City Defendants also argue that Rule 16's good cause standard applies to the motion, and not the more liberal standard under Rule 15, pointing to this Court's scheduling order with respect to the motion to dismiss.  *Id.* at 2-3.

After the City Defendants indicated that they intended to file a motion to dismiss, the Court issued an order setting the deadline for any amendments of the complaints in response to the motion as March 3, 2025.  ECF No. 30 ("January 15

Order") at 2.   The January 15 Order placed Plaintiffs on notice that they would not be granted a further opportunity to amend their pleadings to address issues raised by the motion to dismiss.  *Id.*

According to Plaintiffs, the amendments to the Complaints should be permitted, notwithstanding the Court's January 15 Order, because they were not aware of any "alleged deficiencies" in their attempt to plead claims of negligent retention and supervision against the City Defendants until a recent court conference.  ECF No. 59 at ¶ 12.  Plaintiffs complain that "Defendants did not raise these alleged deficiencies in their Motion to Dismiss, and had not previously advised Plaintiffs of any such perceived ambiguity or deficiency in the pleadings." ECF No. 59 at ¶ 13.  But as the City Defendants rightfully assert, the operative Complaints cannot reasonably be understood to assert a count for negligent retention or supervision against the City Defendants.  The City Defendants were under no obligation to point out that a potential claim was omitted from the Complaints.

But for the same reason, the Court's January 15 Order does not apply to Plaintiffs' motion to amend.  Plaintiffs are not seeking to amend the Complaints to address deficiencies raised in the motion to dismiss.  Rather, they are seeking to add new claims against the City Defendants.

Notwithstanding Rule 15(a)'s liberal approach to amendments, where a court sets a deadline for amending the pleadings, motions to amend are evaluated under Rule16(b)'s good cause standard.  *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86

21

(2d Cir. 2003). The good cause standard is triggered when the court sets an expiration date after which all amendments are prohibited. *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021); *see also Sec. & Exch. Comm'n v. Rio Tinto plc*, No. 17CV07994 (AT) (DF), 2020 WL 2504008, at *7 (S.D.N.Y. Mar. 9, 2020). That is not what happened here. In the January 15 Order, the Court did not set a deadline after which any further amendments would be forbidden. Indeed, the Court has yet to enter a Case Management Plan in this case. Thus, Rule 16's good cause standard does not apply.

The Court discerns no prejudice to the City Defendants in permitting Plaintiffs leave to amend to include the additional negligence claims. The City Defendants' concern that the prior motion to dismiss briefing will be rendered a nullity is meritless. The Court has adjudicated that motion, and the Section 1983 claims and the respondeat superior claim have been dismissed.

Moreover, as this case was subject to Local Civil Rule 83.10, only certain limited discovery has taken place. Any discovery beyond that has been stayed pending the outcome of the instant motions. *Cf. Lyondell -Citgo Ref., LP v. Petroleos De Venezuela S.A.*, 2004 WL 2650884, at *1 (S.D.N.Y. Nov. 22, 2004). The City Defendants bear the burden of showing prejudice, bad faith, and futility of the proposed amendments, *United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 285 F. Supp. 3d 759, 766 (S.D.N.Y. 2018), which they have not done.

Accordingly, in its discretion, the Court grants the motion for leave to amend the Complaints.

## CONCLUSION

Accordingly, the City Defendants' motion to dismiss is GRANTED. Plaintiffs' motion to amend the complaints is likewise GRANTED. Plaintiffs shall file the amended complaints on the docket in 24-CV-7428 by no later than **August 23, 2025.** The City Defendants' response to the amended complaints shall be due **October 1, 2025.**

The Clerk of the Court is respectfully directed to terminate ECF Nos. 41, 48, and 59.

SO ORDERED.

Dated:  August 14, 2025
      New York, New York

_____
JEANNETTE A. VARGAS
United States District Judge